UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMY R. WILBUR,

        Plaintiff,

v.                                      Case No. 1:07-cv-403
                                      Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for supplemental security income (SSI).

Plaintiff was born on January 1, 1975 and has a high school education (AR 59, 74).[1] She alleges a disability onset date of February 1, 2000 (AR 59). Plaintiff had previous employment as a cashier and factory worker (AR 82). Plaintiff identified her disabling conditions as fibromyalgia, irritable bowel syndrome and severe anxiety (AR 68). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on November 13, 2006 (AR 13-18). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

**I. LEGAL STANDARD**

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

2

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health*

3

*and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). *See Brooks v. Sullivan*, No. 90-5947, 1991 WL 158744 at *2 (6th Cir. Aug. 14,1991) ("[t]o establish medical eligibility for SSI, plaintiff must show either that he was disabled when he applied for benefits . . . or that he became disabled prior to the Secretary's issuing of the final decision on this claim . . . 20 C.F.R. §§ 416.335, 416.330").

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset of disability (AR 15). Second, the ALJ found that she suffered from severe impairments of fibromyalgia, irritable bowel syndrome and anxiety (AR 15). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 15).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> to lift and carry 20 pounds occasionally and 10 pounds frequently and sit, stand and/or walk 6 hours in an 8-hour workday with limited public contact and moderate limitation in attention and concentration.

(AR 15). The ALJ found that plaintiff could not perform her past relevant work (AR 17).

At the fifth step, the ALJ determined that plaintiff had the RFC to perform a range of light work (AR 15). Specifically, the ALJ found that plaintiff could perform the following work in the regional economy (southeastern Michigan): hand packager (7,100 jobs); equipment cleaner (2,900 jobs); machine feeder (1,100 jobs); sorter (1,500 jobs); and inspector (5,400 jobs) (AR 18).

Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 18).

### III. ANALYSIS

Contrary to the order directing filing of briefs, plaintiff's initial brief did not include a "Statement of Errors, setting forth the specific errors of fact or law upon which plaintiff seeks a reversal or remand." Based upon the arguments set forth in the brief, the court gleans two issues for consideration on appeal.

> **A. The ALJ failed to consider the evidence of a treating therapist regarding plaintiff's mental limitations.**

Plaintiff's main contention is that the ALJ did not give adequate consideration to the opinions expressed by an unnamed therapist. Plaintiff is apparently referring to opinions expressed by a social worker, Alycia L. Williams, in her "mental residual functional capacity assessment" dated September 15, 2006 (AR 413-15). Ms. Williams treated plaintiff for approximately four months (April 7, 2006 through August 3, 2006) (AR 415). In her mental RFC assessment, Ms. Williams found that plaintiff was "markedly limited"[2] in a number of work-related areas, including the abilities: to carry out detailed instructions; to maintain attention and concentration; to work in coordination with or proximity to others without being distracted by them; to complete a normal workday or workweek without psychologically based symptoms; to interact appropriately with the general public; to ask simple questions or request assistance; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers without distracting them or exhibiting behavioral extremes; to respond appropriately to changes in the work setting; to travel

---

[2] Ms. Williams' form defined "markedly limited" as "[a]pproximately 75 percent limitation" (AR 415).

in unfamiliar places or use public transportation; and to set realistic goals or make plans independently of others (AR 413-14).

The ALJ summarized plaintiff's mental health treatment at Behavioral Health Resources as follows: plaintiff was treated in 2002, but she was discharged for being a "no show" (AR 16, 144-50); she had a single therapy session in May 2005 (AR 16, 332); and she began therapy again in March 2006, and had received treatment for eight months at the time of the ALJ's decision (AR 16, 309-43). The ALJ noted that plaintiff had a global assessment of functioning (GAF) score of 60 throughout her treatment (AR 16).[3] This GAF score, which lies in the 51 to 60 range, indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR any moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), p. 34. Given this evidence, the ALJ concluded that plaintiff failed to establish that she was disabled for any 12-month consecutive period (AR 16).

The ALJ referenced Ms. Williams' mental RFC assessment, but apparently rejected the assessment because it was performed by a licensed clinical social worker "who is not an

---

[3] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id*. at 32. The GAF scale ranges from 100 to 1. *Id.* at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

acceptable medical source" (AR 16).  Plaintiff contends that the ALJ erred by failing to consider this opinion.  The court agrees.

The ALJ correctly observed that Ms. Williams is not an "acceptable medical source" under 20 C.F.R. § 416.913.  While her opinion can be considered as evidence from an "other source," it is not entitled the weight given to the opinion of a doctor.  *See* 20 C.F.R. §416.913(d)(1) (medical sources not listed in § 913(a), such as nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists and therapists are considered to be "other sources" rather than "acceptable medical sources").  Opinions of these "other" sources are not entitled to controlling weight under the regulations. " *Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997).  *See, e.g., Nierzwick v. Commissioner of Social Security*, No. 00-1575, 2001 WL 303522 at * 4 (6th Cir. March 19, 2001) (physical therapist's report not afforded significant weight because the therapist is not recognized as an acceptable medical source); *Hartranft v. Apfel*,  181 F.3d 358, 361 (3rd Cir. 1999) (a chiropractor's opinion is not "an acceptable medical source" entitled to controlling weight).

However, in 2006, the Commissioner clarified his position with respect to "other source" opinions by adopting Social Security Ruling (SSR) 06-03p (effective Aug. 9, 2006).[4]  This SSR acknowledges that with the growth of managed health care in recent years, various medical sources such as nurse practitioners, physician assistants and licensed clinical social workers have increasingly assumed a greater percentage of treatment and evaluation functions previously handled primarily by physicians and psychologists.  SSR 06-03p.  The Commissioner recognized that

---

[4] *See* 20 C.F.R. § 402.35(b)(1) (SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency).

opinions from other medical sources "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." *Id.* In addition, SSR 06-03p provides some guidelines for the ALJ to use in reviewing such "other source" evidence:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision in hearing cases and in the notice of determination (that is, in the personalized disability notice) at the initial and reconsideration levels, if the determination is less than fully favorable.

SSR 06-03p.

Under the facts of this case, the ALJ should not have summarily rejected Ms. Williams' opinion of plaintiff's mental impairments and functional limitations. Indeed, there was little analysis considered in this regard. The ALJ found that neither of the two examining consultants, Thomas M. Horner, Ph. D. and Michelle Croce, MA, LLP, assessed plaintiff's ability to work (AR 16-17). Dr. Horner examined plaintiff on May 14, 2003 (AR 152-62). At the time, plaintiff was grieving over her mother's death (AR 156). The doctor found that plaintiff was essentially normal, noting that she was mildly depressed with a history of anxiety but none shown at the interview (AR 155-57). The doctor summarized her mental status as follows: articulate speech; adequate language; focused and sustained attention/concentration; an "affect/mood"

8

described as cheerful and animated; and grossly normal intelligence (AR 160).  The doctor found that she was able to make change, pay a bill, and was motivated to spend funds appropriately (AR 160).  He assigned plaintiff a GAF score of 60, and opined that she was coping with health matters, bereavement and an unhappy childhood (AR 160-61).

Ms. Croce examined plaintiff on July 21, 2004 (AR 277-84).  Ms. Croce found plaintiff tense and somewhat depressed, but was in contact with reality (AR 280-81). Ms. Croce described plaintiff's stream of mental activity as follows, "[r]esponses were spontaneously produced, normal in rate, relevant, coherent, logical and organized" (AR 280).  Ms. Croce found that plaintiff attributed a number of symptoms (feeling uptight, difficulty breathing and being irritable) to her mother's death (AR 282).  Ms. Croce diagnosed plaintiff as suffering from a generalized anxiety disorder and dysthymic disorder (early onset), and assigned plaintiff a GAF score of 58 which, like her other GAF scores, fell within the 51 to 60 range (AR 282).

Finally, the ALJ, without explanation, failed to address the PRTF and mental RFC assessment performed by state agency physician E. Florante, M.D. in June 2003 (AR 163-84).  Dr. Florante was the only state agency physician to prepare a mental RFC assessment.  In this assessment, Dr. Florante found that plaintiff's statements were partially credible and concluded that she "appears capable of simple unskilled work on a competitive sustained basis" (AR 180).  It is noteworthy that Dr. Florante found that plaintiff suffered some limitations as early as June 2003, nearly three years before her eight-month treatment with Ms. Williams in 2006.

It appears that the ALJ relied upon the opinion expressed by a state medical consultant, Matthew Rushlau, Ed. D., whose Psychiatric Review Technique Form (PRTF) from May

9

2004 concluded that plaintiff's affective disorders and anxiety-related disorders did not rise to the level of a listed impairment, causing only mild functional limitations (AR 294-308).

In short, the ALJ did not evaluate the two mental RFC assessments in the record. Under these circumstances, the ALJ should have given some consideration to Ms. Williams' opinion on the key issues of impairment severity and functional effects of those impairments. *See* SSR 06-03p. Accordingly, the ALJ's decision should be reversed and remanded pursuant to sentence four of § 405(g) for an evaluation of Ms. Williams' opinion. It would also be appropriate for the ALJ to evaluate Dr. Florante's mental RFC assessment as well, as discussed below.

> **B.     The ALJ's hypothetical question did not consider plaintiff's mental limitations.**

Next, plaintiff contends that the ALJ should have included additional mental limitations in the hypothetical question posed to the vocational expert (VE). An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Here, the ALJ posed the following hypothetical questions to the VE:

10

> Q. Assume a person is limited to the light level of exertion, would be limited in the work situation from dealing with the public. There'd be a moderate limitation [sic] and a moderate limitation in concentration and attention. Given those limitations, could a person perform any of her past relevant work?
>
> A. May I clarify, sir? Was that no public or limited --
>
> Q. No.
>
> A. -- contact with public?
>
> Q. A moderate limitation in both concentration and in dealing with the public.
>
> A. Okay. I, I don't think such a person could do cashier work.
>
> Q. Okay. Would there be unskilled work for a person with those limitations?
>
> A. Looking at unskilled and what light work [sic], sir, there would [sic] hand packager positions, 7,100; equipment cleaner, 2,900; machine feeder, 1, 100; sorter, 1,500; inspector, 5,400. And this is not a comprehensive list, sir.

(AR 449). The ALJ adopted the VE's testimony as establishing the types of work that plaintiff could perform (AR 18).

Plaintiff contends that the ALJ's hypothetical questions failed to include limitations as set forth in a PRTF and mental RFC assessment prepared by Dr. Florante (AR 163-84). Pursuant to SSR 96-6p, the ALJ was required to consider the opinions of state agency physicians such as Dr. Florante:

> Because State agency medical and psychological consultants and other program physicians and psychologists are experts in the Social Security disability programs, the rules in 20 CFR 404.1527(f) and 416.927(f) require administrative law judges and the Appeals Council to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists. Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.

11

SSR 96-6p.

Here, the court cannot perform an adequate appellate review of the hypothetical question posed to the VE in the absence of the ALJ's evaluation of Dr. Florante's opinion. "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *quoting Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir.1984).[5]

Accordingly, the ALJ's decision should be reversed and remanded pursuant to sentence four of § 405(g) for an evaluation of Dr. Florante's opinion. On remand, the ALJ should explain the weight given to Dr. Florante's opinion pursuant to SSR 96-6p and, if necessary, obtain additional vocational evidence.

### IV.    Recommendation

For these reasons, I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for consideration of Ms. Williams opinions and to explain the weight given to Dr. Florante's opinions.


Dated:  June 18, 2008                               /s/ Hugh W. Brenneman, Jr.
                                                    HUGH W. BRENNEMAN, JR.
                                                    United States Magistrate Judge

---

[5] For example, if the ALJ had explained the weight given to Dr. Florante's opinion, then he may have incorporated the additional limitation that plaintiff can perform only "simple unskilled work" into the hypothetical question posed to the VE, which may have reduced the number of jobs identified by the VE.

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).